UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------X
OCHIENZES GODWIN,

                              Plaintiff,

               -against-

BUKA NEW YORK CORP., LOOKMAN
MASHOOD and NATALIE GOLDBURG,

                              Defendants.
----------------------------------------------------------X

**REPORT AND
RECOMMENDATION**
20 CV 969 (RPK) (CLP)

**POLLAK**, Chief United States Magistrate Judge:

        On February 21, 2020, plaintiff Ochienzes Godwin ("plaintiff") filed this action against

Buka New York Corp ("Buka"), Lookman Mashood, and Natalie Goldburg (collectively,

"defendants"), seeking damages for unpaid minimum wages, unpaid spread-of-hours pay, and

violations of wage notice and wage statement requirements, pursuant to the Fair Labor Standards

Act ("FLSA"), 29 U.S.C. § 201 et seq., and the New York Labor Law ("NYLL") § 650, et seq.

        Despite proper service, defendants failed to file an answer or respond to the Complaint

and on August 14, 2020, the Clerk of Court issued a Certificate of Default against the

defendants.  By Notice of Motion dated August 24, 2020, plaintiff moved for default judgment.

The motion was referred to the undersigned on August 26, 2020.

        For the reasons that follow, it is respectfully recommended that plaintiff be awarded

damages as set forth below.


                    FACTUAL BACKGROUND

        Plaintiff alleges that defendant Buka is a New York corporation that owns and operates a

1

restaurant located at 946 Fulton Street, Brooklyn, N.Y.  (Compl.[1] ¶ 6).  Plaintiff alleges that

Buka has an annual gross volume of sales of no less than $500,000 and its employees are

engaged in preparing, cooking and serving food and beverages, including a variety of products

and ingredients that have moved in interstate commerce.  (Id. ¶¶ 11, 12).

According to the Complaint, individually named defendant Lookman Mashood is the

Chief Executive Officer of Buka, head chef, manager and shareholder.  (Id. ¶ 7).  The other

individually named defendant, Natalie Goldburg, is alleged to be a manager, an officer and a

shareholder of Buka.  (Id. ¶ 8).  Plaintiff alleges that at all times relevant to the action, Mashood

and Goldburg were responsible for hiring and firing employees, for determining employee hours,

determining the amounts, manner and methods of paying employees' wages, paying employees,

signing checks on behalf of Buka, and handling other administrative and managerial duties

relating to the day to day business and financial operations of Buka.  (Id. ¶ 14).

Plaintiff Ochienzes Godwin was employed as a server at the restaurant from January 22,

2019 to March 29, 2019.  (Id. ¶ 4).  She alleges that her main responsibilities were to take

customers' orders, serve them food and drinks and collect payment from them.  (Id. ¶ 16).  When

she was initially hired in January 2019, plaintiff claims that she was interviewed by defendant

Goldburg and told she would be paid $50 per day.  (Id. ¶ 17).  Two or three weeks after she

started her employment, Mashood told plaintiff that her rate of pay was actually $60 a day.  (Id. ¶

18).

Plaintiff alleges that not only was she never paid $60 a day as promised, but she was

never paid any salary, hourly wage or daily wage for the hours she worked for defendants.  (Id. ¶

19).  She did receive tips from customers, generally more than $30 per month in tips.  (Id. ¶ 20-

---

[1] Citations to "Compl." refer to plaintiff's Complaint, filed on February 21, 2020, ECF No. 1.

21).  While some of the tips were left in cash, others were paid by credit card.  (Id. ¶¶ 20, 22).

Plaintiff alleges that some of the credit card tips intended for plaintiff were retained by

defendants.  (Id. ¶ 22).  Plaintiff alleges that defendants never notified her that they would be

taking a tip credit toward the minimum wage, nor did they tell her they would pay the difference

between what she received in tips and the applicable minimum wage in the event the tips were

less.  (Id. ¶ 30).

Plaintiff also claims that she did not take meal breaks and worked continuously from the

beginning of her shifts until the end.  (Id. ¶ 24).  She alleges that defendants failed to maintain

accurate records of the hours she worked, failed to provide her with written notice of, *inter alia*,

her regular and overtime pay rates as required by NYLL § 195(1)(a), and failed to provide her

with a statement containing the information required by NYLL § 195(3).  (Id. ¶¶ 25, 27, 28).

In late March or early April 2019, plaintiff complained to defendant Goldburg that

defendants were violating the law by failing to pay her minimum wages and that if she sued

them, she would be entitled to recover liquidated damages as well.  (Id. ¶ 31).  Plaintiff alleges

that after she complained, defendants stopped putting her on the schedule, terminating her for

asserting her rights.  (Id. ¶ 32).

In her Complaint, plaintiff asserts causes of action for failing to pay minimum wages

under Federal and State law (First and Second[2] Causes of Action); tip stealing, in violation of 29

U.S.C. § 203(m)(2)(B) and in violation of NYLL § 196-d and 12 NYCRR § 146-1.3 (Third and

Fourth Causes of Action); spread-of-hours violations (Fifth Cause of Action); retaliation under

---

[2] Although the heading for the Second Cause of Action reads:  "Second Cause of Action: New York State Overtime Violations," it is clear from the other allegations in the Complaint and from the paragraphs setting forth the Second Cause of Action that the reference to "Overtime" was in error and that the Second Cause of Action alleges violations of the NYLL with respect to defendants' failure to pay minimum wages.

Federal and State law (Sixth and Seventh Causes of Action); and failure to provide proper wage notices pursuant to NYLL §§ 195(1)(a) and 195(3) (Eighth and Ninth Causes of Action).

Following the filing of the Complaint, plaintiff served the corporate defendant Buka on March 3, 2020 by serving a copy of the Summons and Complaint with the Authorized Agent for service in the Office of the Secretary of State.  (Aff. of Serv., ECF No. 9).  Service upon defendant Goldburg was performed on March 5, 2020 by service at the restaurant upon a person of suitable age and discretion, with a copy mailed to the defendant at that address the following day, March 6, 2020.  (Aff. of Serv., ECF No. 10).  Defendant Mashood was also served at the business address on June 23, 2020, with a copy mailed to him on June 29, 2020 at the business address.  (Aff. of Serv., ECF No. 12).

When the defendants failed to answer or otherwise move with respect to the Complaint, the Clerk of Court entered a default on August 14, 2020.  (ECF No. 15).  Thereafter, plaintiff filed a motion for default judgment which was referred to the undersigned by the Honorable Rachel P. Kovner to conduct an inquest and prepare a Report and Recommendation as to damages.

DISCUSSION

I. Default Judgment

    A.  Legal Standard

Rule 55(a) of the Federal Rules of Civil Procedure provides that "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default."  Fed. R. Civ. P. 55(a).  Rule 55 sets forth a two-step process for an entry of default judgment.  See Enron Oil

4

Corp. v. Diakuhara, 10 F.3d 90, 95-96 (2d Cir. 1993).  First, the Clerk of Court enters the default

pursuant to Rule 55(a) by notation of the party's default on the Clerk's record of the case.  See

id.  Second, after the Clerk of Court enters a default against a party, if that party fails to appear or

otherwise move to set aside the default pursuant to Rule 55(c), the court may enter a default

judgment.  See Fed. R. Civ. P. 55(b).

Providing guidance as to when a default judgment is appropriate, the Second Circuit has

cautioned that since a default judgment is an extreme remedy, it should only be entered as a last

resort.  See Meehan v. Snow, 652 F.2d 274, 277 (2d Cir. 1981).  While the Second Circuit has

recognized the "push on a trial court to dispose of cases that, in disregard of the rules, are not

processed expeditiously [and] . . . delay and clog its calendar," it has held that the district court

must balance that interest with its responsibility to "[afford] litigants a reasonable chance to be

heard." Enron Oil Corp. v. Diakuhara, 10 F.3d at 95-96.  Thus, in light of the "oft-stated

preference for resolving disputes on the merits," default judgments are "generally disfavored,"

and doubts should be resolved in favor of the defaulting party.  Id.  Accordingly, plaintiffs are

not entitled to a default judgment as a matter of right simply because a party is in default.  See

Erwin DeMarino Trucking Co. v. Jackson, 838 F. Supp. 160, 162 (S.D.N.Y. 1993) (noting that

courts must "supervise default judgments with extreme care to avoid miscarriages of justice").

The Court has significant discretion to consider a number of factors in deciding whether

to grant a default judgment, including:  (1) whether the grounds for default are clearly

established; (2) whether the claims were pleaded in the complaint, thereby placing the defendants

on notice, see Fed. R. Civ. P. 54(c) (stating "[a] default judgment must not differ in kind from, or

exceed in amount, what is demanded in the pleadings"); King v. STL Consulting LLC, No. 05

CV 2719, 2006 WL 3335115, at *4-5 (E.D.N.Y. Oct. 3, 2006) (holding that Rule 54(c) is not

violated in awarding damages that accrued during the pendency of a litigation, so long as the complaint put the defendant on notice that the plaintiff may seek such damages); and (3) the amount of money potentially involved – the more money involved, the less justification for entering the default judgment.  Hirsch v. Innovation Int'l, Inc., No. 91 CV 4130, 1992 WL 316143, at *2 (S.D.N.Y. Oct. 19, 1992).  Additionally, the Court may consider whether material issues of fact remain, whether the facts alleged in the complaint state a valid cause of action, whether plaintiffs have been substantially prejudiced by the delay involved, and whether the default judgment might have a harsh effect on the defendants.  See Pacific M. Int'l Corp. v. Raman Int'l Gems, Ltd., No. 10 CV 9250, 2012 WL 3194968, at *5 (S.D.N.Y. Aug. 7, 2012).

The burden is on the plaintiff to establish her entitlement to recovery.  See Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp., 973 F.2d 155, 158 (2d Cir. 1992), cert. denied, 506 U.S. 1080 (1993).  When a default judgment is entered, the defendants are deemed to have admitted all well-pleaded allegations in the complaint pertaining to liability.  See id.  For the purposes of an inquest, a court accepts as true all factual allegations in the complaint, except those claims relating to damages.  See Au Bon Pain Corp. v. Artect, Inc., 653 F.2d 61, 65 (2d Cir. 1981).

### B.  Entry of Default Judgment

#### 1.  Liability for Damages Alleged in Complaint

In this case, plaintiff alleges that defendants violated the FLSA, 29 U.S.C. § 206, by failing to pay plaintiff a minimum wage of at least $7.25 per hour.  (Compl. ¶¶ 34, 35; Bright Decl.[3] ¶ 4).  Plaintiff also alleges that defendants violated the New York Labor Law not only by

---

[3] Citations to "Bright Decl." refer to the Declaration of Daniel R. Bright, Esq. dated August 24, 2020, ECF No. 16-1.

failing to pay plaintiff the proper minimum wage, but also by failing to pay her "one hour's pay at the basic minimum hourly wage rate" for any days in which the "spread of hours" between the beginning of the employee's day and the end of the day exceeded ten hours.[4]  (See Compl. ¶¶ 48-50); see also 12 NYCRR § 146-1.6).  In addition, plaintiff alleges that defendants failed to pay her all the tips to which she was entitled and failed to provide proper wage notices in violation of the Wage Theft Prevention Act.

a)  FLSA

To establish a claim under the FLSA, plaintiffs must prove the following:  (1) the defendant is an enterprise participating in commerce or the production of goods for the purpose of commerce; (2) the plaintiffs are 'employees' within the meaning of the FLSA; and (3) the employment relationship is not exempted from the FLSA.  Edwards v. Cmty. Enters., Inc., 251 F. Supp. 2d 1089, 1098 (D. Conn. 2003) (citing Tony & Susan Alamo Found. v. Sec. of Labor, 471 U.S. 290, 295 (1985)).

A defendant is an "[e]nterprise engaged in commerce or in the production of goods for commerce" if the defendant is an enterprise that:

> has employees engaged in commerce or in the production of
> goods for commerce, or that has employees handling, selling,
> or otherwise working on goods or materials that have been
> moved in or produced for commerce by any person; and . . .
> whose annual gross volume of sales made or business done is
> not less than $500,000.

29 U.S.C. § 203(s)(1)(A).  In her Complaint, plaintiff alleges that the corporate defendant has been and continues to be an employer engaged in interstate commerce and/or the production of

---

[4] See NYLL §§ 650 et seq. and its regulations, N.Y. Comp. Codes R. & Regs. tit. 12 § 137-1.7 (West 2011).  (See Compl. ¶ 50).

goods for commerce within the meaning of the FLSA.  (Compl. ¶ 13).  Plaintiff further alleges that the corporate defendant has had gross revenues in excess of $500,000 and used goods produced in interstate commerce.  (Id. ¶¶ 11, 12).  As for defendants Mashood and Goldburg, plaintiff alleges that Mashood is the Chief Executive Officer, head chef, and manager, and that Goldburg is also a manager and officer of Buka.  (Id. ¶¶ 7, 8).  As such, they both allegedly had the power to hire and fire employees, set wages and schedules, and retain their records.  (Id. ¶ 14).

The FLSA defines an "employee" as "any individual employed by an employer."  29 U.S.C. § 203(e)(1); Edwards v. Cmty. Enters., Inc., 251 F. Supp. 2d at 1098.  An "employer" is "any person acting directly or indirectly in the interest of an employer in relation to an employee . . . ."  29 U.S.C. § 203(d).  "Person" is defined as "an individual, partnership, association, corporation, business trust, legal representative, or any organized group of persons."  29 U.S.C. § 203(a).  To "employ" means "to suffer or permit to work."  29 U.S.C. § 203(g).  The FLSA covers both "employees who in any workweek [are] engaged in commerce or in the production of goods for commerce" and those persons who are "employed in an enterprise engaged in commerce or in the production of goods for commerce. . . ."  29 U.S.C. § 206(a).

Plaintiff allege in her Complaint that she was an employee engaged in commerce and/or in the production of goods for commerce, as defined by the FLSA.  (Compl. ¶¶ 5, 16).  It follows, therefore, that for purposes of this default, plaintiff qualifies as an "employee" under the FLSA.  Additionally, the Court does not find any basis for exempting the employment relationship at issue from the FLSA's provisions.[5]

---

[5] See 29 U.S.C. § 213(a) setting forth the exemptions.

Moreover, plaintiff alleges in her Complaint that during the period of her employment, she worked between 9 and 11 hours on the days that she worked, which ranged from one to three days a week depending on the week.  (Compl. ¶ 23).  Plaintiff further alleges that she did not take meal breaks and worked continuously from the moment she arrived until her departure at the end of her shift.  (Id. ¶ 24).  Plaintiff claims that although she was promised $60 a day in wages, she was never paid any salary or hourly or daily wage; all she received was a portion of the tips left by the customers.

Thus, because this is a default, the Court accepts plaintiff's uncontested allegations as true, and respectfully recommends that plaintiff be deemed to have sufficiently set forth the necessary elements to state a claim under the FLSA.

### 2) NYLL Claims

Plaintiff also alleges that defendant violated the NYLL.  Like the FLSA, the NYLL establishes certain minimum wage rates.  See 12 N.Y.C.R.R. § 142-2.2; see, e.g., Noble v. 93 Univ. Place Corp., 303 F. Supp. 2d 365, 376 (S.D.N.Y. 2003).  In addition, under the NYLL, an employer is required to provide "one hour's pay at the basic minimum hourly wage rate" on days in which the employee works a spread of hours greater than 10 hours ("spread of hours" wages). 12 N.Y.C.R.R. § 142-2.4(a).

To recover under the NYLL, plaintiff must prove that she is an "employee[]" and that the defendant is an "employer" as defined by the statute.  See Lauria v. Heffernan, 607 F. Supp. 2d 403, 407 (E.D.N.Y. 2009).  Unlike the FLSA, the NYLL does not require that a defendant achieve a certain minimum in annual sales or business in order to be subject to the law.  See N.Y. Lab. Law § 651(6) (defining employer as "any individual, partnership, association, corporation,

limited liability company, business trust, legal representative, or any organized group of persons acting as employer").  Similarly, an employee is simply defined as "any individual employed or permitted to work by an employer in any occupation. . . ."  N.Y. Lab. Law § 651(5).

In this case, plaintiff's allegations that she was employed by defendants within the meaning of Section 190(2) of the NYLL  (Compl. ¶ 5), and that defendants willfully failed to pay minimum wages (id. ¶¶ 36, 39, 40), suffice to establish a violation of the minimum wage requirements of the NYLL.

### 3) Plaintiff's Other Claims

In addition to her minimum wage claims, plaintiff raises a number of other claims under state and federal law, which when viewed within the totality of the allegations of the Complaint, state claims for spread-of-hour violations, unlawful tip retention, wage notice violations and retaliation.  Specifically, plaintiff's allegations that defendants failed to pay an additional hour's pay at the minimum wage for each day she worked more than ten hours in  a day, and her chart showing that there were at least seven days in which she worked 11 hours without receiving such pay, state a violation of the NYLL's requirement that employers pay spread-of-hours pay.  (Id. ¶¶ 23, 48, 49).  The Complaint further alleges that defendants retained tips intended for plaintiff, stating claims under 29 U.S.C. § 203(m)(2)(B), NYLL § 196-d, and 12 NYCRR § 146-1.3.  (Id. ¶¶ 42, 43, 45, 46).  A review of the allegations in the Complaint demonstrate that plaintiff has also stated a claim for violations of the Wage Theft Prevention Act, NYLL §§ 195(1) and 195(3), in that she never received the notice required by Section 195(1)(a) which must be provided within ten business days of hiring (id. ¶¶ 61-62), nor did she ever receive a statement containing the information required by Section 195(3).  (Id. ¶¶ 63-65).  Finally, her allegation that she was

terminated in retaliation for complaining about her wages is sufficient to state a claim of retaliatory discharge under both federal and state law.  See 29 U.S.C. § 215(a)(3) and NYLL § 215.  (Compl. ¶¶ 52-54, 56-59).

Accordingly, based on these uncontested allegations, the Court respectfully recommends that plaintiff be deemed to have adequately alleged the elements necessary to state claims under the FLSA and New York Labor Law.


C.  Default Determination

Based upon a review of the allegations in the Complaint, which are undisputed at this time, the Court finds that plaintiff has sufficiently established liability so as to warrant entry of a default judgment for the requested damages.  See 29 U.S.C. § 207(a)(1); N.Y. Comp. Codes R. & Regs. tit. 12 § 142-2.4 (West 2011).

Here, it is beyond dispute that defendants are in default.  Although it appears that defendants were properly served with the Summons and Complaint, they failed to file an answer or otherwise respond to the pleadings.  Moreover, the failure by the corporate defendant to obtain counsel in this case constitutes a failure to defend because the corporate defendant, as a corporation, cannot proceed in federal court pro se.  See Shapiro, Bernstein & Co. v. Cont'l Record Co., 386 F.2d 426, 427 (2d Cir. 1967) (per curiam) (stating that "it is settled law that a corporation cannot appear other than by its attorney"); see also Jones v. Niagara Frontier Transp. Auth., 722 F.2d 20, 22 (2d Cir. 1983) (discussing the rationale for requiring corporations, as "artificial" entities, to appear through counsel only).  Defendants also failed to respond to plaintiff's request that default be entered, see Hirsch v. Innovation Int'l, Inc., 1992 WL 316143, at *2 (holding that "[defendant's] default is crystal clear – it does not even oppose this motion")

and they did not submit papers in response to plaintiff's motion for default judgment. Thus, plaintiff's evidence on damages is undisputed.

Here, defendants' failure to comply with the Court's Order to appear in this action or respond to plaintiff's papers requesting default judgment warrants the entry of a default judgment in this matter. Additionally, the amount of money involved in this case is not significant, unlike a case in which there are potentially millions of dollars involved. See id. (entering default but giving defendant 20 days to set aside the default because plaintiff's damages request ran well into the millions of dollars).

Given the numerous opportunities afforded to defendants, and their apparent lack of interest in participating in these proceedings, the Court finds no compelling reason to delay further. Accordingly, it is respectfully recommended that default judgment be entered against defendants Buka, Mashood and Goldburg.


   D.   Liability of Individual Defendants

Plaintiff brings claims against the corporate defendant Buka as well as individual defendants Mashood and Goldburg, who are alleged to be the sole shareholders of Buka. (Compl. ¶ 9). Individuals may be held jointly and severally liable under NYLL if they meet the statute's definition of an employer. Rodriguez v. Almighty Cleaning, Inc., 784 F. Supp. 2d 114, 128 (E.D.N.Y. 2011). This definition extends to "any person . . . employing any individual in any occupation, industry, trade, business or service or any individual . . . acting as employer." Irizarry v. Catsimatidis, 722 F.3d 99, 118 (2d Cir. 2013) (citing NYLL § 190(3)). Courts apply a four-part test examining whether the individual "(1) had the power to hire and fire the employees; (2) supervised and controlled schedules or conditions of employment; (3) determined

the rate and method of payment; (4) and maintained employment records."  Lauria v. Heffernan, 607 F. Supp. 2d 403, 409 (E.D.N.Y. 2009).

Here, plaintiff alleges that Mashood and Goldburg had the power to hire and fire employees, including the plaintiff.  (Compl. ¶ 14).  She further alleges that the individual defendants determined the work hours of the plaintiff and other employees.  (Id.)  She claims that the defendants' duties and responsibilities also included "determining the amounts, manner, and methods of payment of employees' wages," including the plaintiff's wages.  (Id.)  Finally, she claims that Mashood and Goldburg signed checks on behalf of the corporate defendant and performed other administrative and managerial duties relating to its operations.  (Id.)  Taken together and drawing all reasonable inferences in favor of plaintiff, the allegations demonstrate that defendants Mashood and Goldburg were employers within the meaning of the NYLL and are jointly and severally liable for the judgment.


II.  Damages

A.  Legal Standard

When a default judgment is entered, the defendants are deemed to have admitted all well-pleaded allegations in the Complaint pertaining to liability.  See Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp., 973 F.2d at 158; Montcalm Publ'g Corp. v. Ryan, 807 F. Supp. 975, 977 (S.D.N.Y. 1992) (citing United States v. Di Mucci, 879 F.2d 1488, 1497 (7th Cir. 1989)); Au Bon Pain Corp. v. Artect, Inc., 653 F.2d at 65; Deshmukh v. Cook, 630 F. Supp. 956, 959-60 (S.D.N.Y. 1986); 6 Moore's Federal Practice ¶ 55.03[2] at 55-16 (2d ed. 1988).  However, the plaintiff must still prove damages in an evidentiary proceeding at which the defendants have the opportunity to contest the claimed damages.  See Greyhound Exhibitgroup, Inc. v. E.L.U.L.

13

Realty Corp., 973 F.2d at 158.  "'While a default judgment constitutes an admission of liability, the quantum of damages remains to be established by proof unless the amount is liquidated or susceptible of mathematical computation.'"  Levesque v. Kelly Commc'ns, Inc., No. 91 CV 7045, 1993 WL 22113, at *4 (S.D.N.Y. Jan. 25, 1993) (quoting Flaks v. Koegel, 504 F.2d 702, 707 (2d Cir. 1974)).

When a court enters a default judgment and the amount of damages sought does not consist of a sum certain, Rule 55(b) of the Federal Rules of Civil Procedure provides that:  "The Court may conduct hearings or make referrals – preserving any federal statutory right to a jury trial – when, to enter or effectuate judgment, it needs to . . . determine the amount of damages." Fed. R. Civ. P. 55(b)(2)(B).  While "the court must ensure that there is a basis for the damages specified in a default judgment, it may, but need not, make the determination through a hearing." Fustok v. Conticommodity Servs., Inc., 122 F.R.D. 151, 156 (S.D.N.Y. 1988) (collecting cases), aff'd, 873 F.2d 38 (2d Cir. 1989).  Here, because the plaintiff has provided reasonably detailed affidavits in support of her request for damages, the Court sees no reason not to proceed.

B.  Damages Requested by Plaintiff

1)  Minimum Wages Under the FLSA and the NYLL

Plaintiff seeks reimbursement for the minimum wages that she should have received pursuant to both the FLSA and the NYLL.  (See Compl. ¶¶ 34-37, 39-40).  Plaintiff asserts that although defendants promised to pay her $60 a day, she was never paid any salary, or hourly or daily wages; all she received was a portion of the tips left by customers, and she was never provided with the proper tip notice that would allow defendants to deduct the amount of tips

received from the total amount due at the minimum wage rate. (Compl. ¶¶ 19, 28, 30; Godwin Decl.[6] ¶¶ 4, 8).

Plaintiff has provided a chart showing the hours worked on each specific day that she can recall working:

| | |
|---|---|
| 1/22/19 | 11 hours worked |
| 1/26/19 | 11 hours worked |
| 1/31/19 | 9.5 hours worked |
| 2/3/19 | 10 hours worked |
| 2/9/19 | 11 hours worked |
| 2/12/19 | 10 hours worked |
| 2/14/19 | 11 hours worked |
| 2/15/19 | 9.5 hours worked |
| 2/24/19 | 11 hours worked |
| 2/28/19 | 9.5 hours worked |
| 3/2/19 | 11 hours worked |
| 3/5/19 | 9.5 hours worked |
| 3/9/19 | 11 hours worked |
| 3/29/19 | 9 hours worked |

Total Hours Worked          144

(Godwin Decl. ¶ 9).

Under the FLSA, the minimum wage in effect at the time was $7.25 per hour.  Had plaintiff received the proper minimum wages under the FLSA, she would have been paid a total of $1,044 for the 144 hours worked.  However, at the $15.00 an hour minimum wage in effect under the NYLL at the time[7], plaintiff should have received wages of $2,160.

Although plaintiff has proven that she was not paid the proper minimum wage under both the FLSA and the NYLL, plaintiffs "are not entitled to recover twice for the same injury." Charvac v. M & T Project Managers of New York, Inc., No. 12 CV 05637, 2015 WL 5475531,

---

[6] Citations to "Godwin Decl." refer to the Declaration of Ochienzes Godwin, dated August 20, 2020, ECF No. 16-7.

[7] Plaintiff alleges that, during the relevant time period, defendant Buka had 11 or more employees.  (Compl. ¶ 15).  During this time, the minimum wage was $15.00 per hour for employers in New York City with 11 or more employees.  N.Y. Lab. Law § 652(1)(a)(i).

at *4 (E.D.N.Y. June 17, 2015), <u>report and recommendation adopted as modified</u>, No. 12 CV
5637, 2015 WL 5518348 (E.D.N.Y. Sept. 17, 2015) (internal quotation marks and citations
omitted); <u>Llolla v. Karen Gardens Apartment Corp.</u>, No. 12 CV 1356, 2014 WL 1310311, at *11
(E.D.N.Y. Mar. 10, 2014), <u>report and recommendation adopted as modified</u>, No. 12 CV 1356,
2014 WL 1311773 (E.D.N.Y. Mar. 28, 2014).  <u>See also</u> <u>Jin M. Cao v. Wu Liang Ye Lexington</u>
<u>Rest., Inc.</u>, No. 08 CV 3725, 2010 WL 4159391, at *3 (S.D.N.Y. Sept. 30, 2010) (holding that
"[a]lthough plaintiffs are entitled to recover unpaid minimum wages and overtime pay under
both the FLSA and the Labor law, they may not recover twice").  Having established wage
violations under both laws, plaintiffs "may recover under the statute which provides the greatest
amount of damages."  <u>Charvac v. M & T Project Managers of New York, Inc.</u>, 2015 WL
5475531, at *4 (quoting <u>Jiao v. Shi Ya Chen</u>, No. 03 CV 0165, 2007 WL 4944767, at *17
(S.D.N.Y. Mar. 30, 2007) (citation omitted)).

Accordingly, since plaintiff prevailed under both state and federal law, "the law
providing the greatest recovery will govern."  (<u>Id.</u>) (quoting <u>Wicaksono v. XYZ 48 Corp.</u>, No. 10
CV 3635, 2011 WL 2022644, at *3 (S.D.N.Y. May 2, 2011), <u>report and recommendation</u>
<u>adopted by</u> 2011 WL 2038973 (S.D.N.Y. May 24, 2011)); <u>Maldonado v. La Nueva Rampa, Inc.</u>,
No. 10 CV 8195, 2012 WL 1669341, at *5 (S.D.N.Y. May 14, 2012).  Here, because the
minimum wage rate in New York was higher than the federal minimum wage rate, the Court
respectfully recommends that plaintiff be awarded $2,160 in unpaid minimum wages from
defendants based on her minimum wage  claim under the NYLL.

The Court recognizes that plaintiff concedes that she did receive tips but alleges that she
was never provided with the applicable tip credit notice required under the law.  Under the
FLSA, to be eligible for the tip credit, the employer bears the burden of showing that it has

satisfied two conditions: (1) informing the employee of the "tip credit" provision of the FLSA; and (2) permitting the employee to retain all of the tips the employee receives.  See Copantitla v. Fiskardo Estiatorio, Inc.,788 F. Supp. 2d 253, 287 (S.D.N.Y. 2011).  "This notice provision is strictly construed and normally requires that an employer take affirmative steps to inform affected employees of the employer's intent to claim the tip credit."  Inclan v. New York Hosp. Grp., Inc., 95 F. Supp. 3d 490, 497-98 (S.D.N.Y. 2015) (quoting Perez v. Lorraine Enters., Inc., 769 F.3d 23, 27 (1st Cir. 2014)).  Here, not only have defendants failed to show that they informed plaintiff of the tip credit provision, but plaintiff alleges that defendants retained some of the tips that she was entitled to receive.  Under these circumstances, the Court finds that defendants were not eligible to deduct the tips received from the amount that was owed plaintiff under the minimum wage and therefore, that amount has not been considered in determining plaintiff's minimum wage award.  Similarly, since plaintiff does not seek reimbursement for withheld tips, that amount has not been included in the award.

2)  Spread of Hours Wages

Under NYLL, an employee is entitled to receive one additional hour of pay calculated at the applicable minimum wage rate per day for the days during which the employee worked more than 10 hours. 12 N.Y.C.R.R. § 142-2.4.  In this case, plaintiff alleges that there were seven (7) days in which she worked more than 10 hours.  Again, since the defendants have chosen not to appear and contest plaintiff's damage calculations, the Court has multiplied the seven days times $15.00, representing one additional hour per day at the applicable minimum wage, to determine that plaintiff is owed $105.00 in spread of hours pay.

3)   <u>Wage Statement Violation Penalties</u>

Under the NYLL, employers are required to give each employee a notice of her rate of pay at the time of hiring.  N.Y. Lab. Law § 195(1)(a).  This notice is required to contain the rate or rates of pay, whether she was to be paid by the hour, shift, day, week, any allowances claimed as part of the minimum wage, the regular pay day, the name of the employer, the physical address of the employer's main office, and the employer's telephone number.  Plaintiff alleges that she was never provided with such a notice at the time of hire.  (Compl. ¶ 27).  Under the NYLL, a plaintiff may recover $50 for each work day during which the employer failed to provide this notice, not to exceed $5,000.  <u>See</u> <u>Cabrera v. 1560 Chirp Corp.</u>, No. 15 CV 8194, 2017 WL 1289349, at *7 (S.D.N.Y. Mar. 6, 2017) (citing 2014 N.Y. Laws ch. 537 § 2, amending N.Y. Lab. Law § 198(1-b)).

Also under the NYLL, employers are  required to give each employee a pay stub listing various specific pieces of information with each paycheck.  <u>See</u> N.Y. Lab. Law § 195(3).  If an employer fails to provide plaintiff with a pay stub, plaintiff may recover $250 for each work day for which the employer fails to give this notice; however, this amount is not to exceed $5,000. <u>See</u> <u>Cabrera v. 1560 Chirp Corp.</u>, 2017 WL 1289349, at *6 (citing 2014 N.Y. Laws ch. 537 § 2, amending N.Y. Lab. Law § 198(1-d)).  Plaintiff asserts that she never received a wage statement or pay stub during the time of her employment with defendants.  (Compl. ¶ 28).

Plaintiff worked a total of 14 days for the defendants.  (Godwin Decl. ¶ 9).  Accordingly, it is respectfully recommended that plaintiff receive $700 for the violation of NYLL § 195(1) and an additional $3,500 for the defendants' violation of NYLL §195(3).[8]

---

[8] Counsel asserts that plaintiff is entitled to the statutory maximum of $5,000 under both NYLL §§ 195(1) and 195(3), but fails to provide a basis for this assertion.  (Bright Decl. ¶ 15).

4)  Liquidated Damages Under the NYLL

Plaintiff also seeks liquidated damages for the underpayment of her wages pursuant to the

NYLL.  (Bright Decl. ¶ 14).

The FLSA and NYLL provide for liquidated damages for wage-claim violations,

calculated in an amount equal to 100% of the wage underpayments.  29 U.S.C. § 216(b); NYLL

§§ 198(1-a) and 663(1).  Prior to November 24, 2009, an employee could recover liquidated

damages under the NYLL if the underpayment was found to be willful.  N.Y. Lab. Law § 663(1)

(1967).  However, an amendment to the NYLL, effective November 24, 2009, "incorporated the

federal standard" and shifted the burden of proving good faith to the employer.  Hengjin Sun v.

China 1221, Inc., No. 12 CV 7135, 2016 WL 1587242, at *3 (S.D.N.Y. Apr. 19, 2016) (quoting

Galeana v. Lemongrass on Broadway Corp., 120 F. Supp. 3d 306, 317 (S.D.N.Y. 2014)).  Under

both statutes, the employer bears the burden of proving good faith and reasonableness.  Under

the NYLL's liquidated damages provision, "courts have not substantively distinguished the

federal standard from the current state standard of good faith."  Inclan v. New York Hosp. Grp.,

Inc., 95 F. Supp. 3d 490, 505 (S.D.N.Y. 2015) (citing He v. Home on 8th Corp., No. 09 CV

5630, 2014 WL 3974670, at *7 n. 19 (S.D.N.Y. Aug. 13, 2014)); Eschmann v. White Plains

Crane Serv., Inc., No. 11 CV 5881, 2014 WL 1224247, at *9 (E.D.N.Y. Mar. 24, 2014)).

Accordingly, the employer's burden of proving good faith "is a difficult one, with double

damages being the norm and single damages the exception."  Gortat v. Capala Bros., 949 F.

Supp. 2d 374, 380 (E.D.N.Y. 2013) (quoting Herman v. RSR Sec. Servs. Ltd., 172 F.3d 132, 142

(2d Cir. 1999), and awarding 100% liquidated damages under the FLSA standard).

Since the defendants have chosen not to appear in this action and have not established

that they had a good faith basis to believe that their underpayment of wages was in compliance

with the NYLL or the FLSA, the Court respectfully recommends that plaintiff be awarded liquidated damages in an amount equal to the amount of unpaid minimum wages and spread of hours pay under the NYLL.  Accordingly, the Court it is respectfully recommended that plaintiff be awarded liquidated damages in the amount of $2,265, which is the amount of unpaid wages owed.

    5)  <u>Interest</u>

Plaintiff also seeks an award of interest calculated at the rate of 9% per annum on the minimum wages and spread-of-hours wages that she was entitled to receive but was not paid, running from the midpoint date of her employment, February 24, 2019.  <u>See</u> <u>Pavia v. Around the Clock Grocery Inc.</u>, No. 03 CV 6465, 2005 WL 4655383, at *8 (E.D.N.Y. Nov. 15, 2005). Plaintiff contends that she is entitled to interest on all wages awarded, pursuant to the NYLL, calculated at a rate of 9% per annum.  <u>See</u> N.Y.C.P.L.R. § 5004.  (Bright Decl. ¶ 16).  Pre-judgment interest is not available under the FLSA because the federal statute does not allow an employee to recover "prejudgment interest on any portion of their recovery for which they have been awarded federal liquidated damages," since liquidated damages under the FLSA "are considered compensatory in nature and thus serve as a form of pre-judgment interest." <u>Yuquilema v. Manhattan's Hero Corp.</u>, No. 13 CV 461, 2014 WL 4207106, at *11 (S.D.N.Y. Aug. 20, 2014) (citations and quotation marks omitted), <u>report and recommendation adopted by</u> 2014 WL 5039428 (S.D.N.Y. Sept. 30, 2014); <u>Yu G Ke v. Saigon Grill, Inc.</u>, 595 F. Supp. 2d at 261.

However, the Second Circuit has held that, as liquidated damages and pre-judgment interest are not functional equivalents under the NYLL, prevailing plaintiffs may recover both

for claims brought under the NYLL.  Reilly v. Natwest Mkts. Grp. Inc., 181 F.3d 253, 265 (2d Cir. 1999).[9]  In this case, since the Court did not award plaintiff damages on her FLSA claims,[10] there is no impediment to awarding liquidated damages and interest on plaintiff's NYLL claims. However, pre-judgment interest is available only on a plaintiff's actual damages, not on liquidated damages or wage statement and wage notice penalties.  See Gamero v. Koodo Sushi Corp., 272 F. Supp. 3d 481, 515 (S.D.N.Y. 2017).

Accordingly, plaintiff is entitled to pre-judgment interest on her unpaid minimum wages and spread-of-hours wages.  Where, as here, violations of the NYLL occur over an extended period of time, courts calculate pre-judgment interest from an intermediate date.  See, e.g., Wicaksono v. XYV 48 Corp., No. 10 CV 3635, 2011 WL 2022644, at *9 (S.D.N.Y. May 2, 2011).  Thus, this Court will compute interest from the date halfway between when plaintiff began and ceased working for defendants.  That date is February 24, 2019.  Since plaintiff is owed a total of $2,160 in unpaid minimum wages, plus $105 in unpaid spread-of-hours compensation[11], it is respectfully recommended that plaintiff be awarded $305.49 in interest, calculated at 9% from February 24, 2019 to August 24, 2020, the date the motion was filed, with

<hr/>

[9] However, where plaintiffs receive damages under both the FLSA and the NYLL, pre-judgment interest accrues on any amounts for which liquidated damages are not awarded under the FLSA (see id.); pre-judgment interest may not be awarded under the NYLL in addition to liquidated damages that are awarded for violations of the FLSA.  See Santillan v. Henao, 822 F. Supp. 2d 284, 298 (E.D.N.Y. 2011); Gunawan v. Sake Sushi Restaurant, 897 F. Supp. 2d at 92-93; see also Hengjin Sun v. China, 2016 WL 1587242, at *5-6 (citing cases and holding that plaintiffs are entitled to pre-judgment interest on their non-overlapping NYLL wage claims at a simple rate of 9% per year).

[10] Although the plaintiff established that defendants violated both the FLSA and NYLL, the Court only recommends an award of damages and liquidated damages under the NYLL.

[11] Counsel requests that pre-judgment interest be awarded for plaintiff's liquidated damages, as well, but as explained supra, pre-judgment interest is only available for actual damages.  (Bright Decl. ¶ 16).  Counsel's cited authority is not to the contrary.  It explains that NYLL plaintiffs may recover pre-judgment interest in addition to liquidated damages, but calculates interest based only on actual damages.  See Coley v. Vannguard Urban Improvement Association, Inc., No. 12 CV 1513628, 2018 WL 1513628, at *12-13 (E.D.N.Y. Mar. 27, 2018) (awarding "prejudgment interest for unpaid wages, underpaid wages, vacation pay, and the portion of overtime pay compensated under the NYLL").

additional interest to be awarded as calculated by the Clerk of Court, from August 24, 2020 to the date final judgment is entered.

6) Retaliation

A plaintiff who demonstrates retaliatory discharge under the NYLL is entitled to "lost compensation," ordinarily in the form of back pay from the date of termination until the date of judgment.  See Belizaire v. RAF Investigative and Sec. Services Ltd., 61 F. Supp. 3d 336, 362-63 (S.D.N.Y. 2014).  Although plaintiff alleged that the defendants discharged her in retribution for her complaints about being paid less than minimum wage (Compl. ¶ 32), she has not  sought damages for that retaliation in connection with this default judgment.  (See Bright Decl. (omitting any mention of retaliatory damages)).  Accordingly, the Court respectfully declines to recommend any damages for retaliation claims.

III.   Attorney's Fees and Costs

 Plaintiff also seeks an award of $8,560 in attorney's fees and $685 in costs incurred in connection with this action,  pursuant to the FLSA, 29 U.S.C. § 216(b), and NYLL §§ 198(4), 663(1). (Bright Decl. ¶ 20).

A.  Prevailing Party

The FLSA is a fee shifting statute and the Court "must" award a reasonable attorney's fee to a prevailing party in an FLSA action.  Khalil v. Original Old Homestead Rest., Inc., 657 F. Supp. 2d 470, 473 (S.D.N.Y. 2009) (quoting 29 U.S.C. § 216(b) (providing that the court in an FLSA action "shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a

reasonable attorney's fee to be paid by the defendant, and costs of the action") (emphasis

supplied)); see, e.g., Torres v. Gristede's Operating Corp., No. 04 CV 3316, 2012 WL 3878144,

at *1 (S.D.N.Y. Aug. 6, 2012), aff'd, 519 Fed. App'x 1, 3 (2d Cir. 2013).  Similarly, the NYLL

provides for an award of reasonable attorney's fees when the employee prevails on a wage claim.

N.Y. Lab. Law § 663(1).  Section 663 provides that successful employees are entitled to:

> [R]ecover in a civil action the amount of any such
> underpayments, together with costs all reasonable
> attorney's fees, prejudgment interest as required
> under the civil practice law and rules . . . .

Id.  Plaintiffs are prevailing parties under the FLSA and NYLL "'if they succeed on any

significant issue in litigation which achieves some of the benefit the parties sought in bringing

suit.'"  Khalil v. Original Old Homestead Rest., Inc., 657 F. Supp. 2d at 474 (quoting Hensley v.

Eckerhart, 461 U.S. 424, 433 (1983)); see Koster v. Perales, 903 F.2d 131, 134 (2d Cir. 1990)

(holding that "[a] plaintiff may be considered a prevailing party even though the relief ultimately

obtained is not identical to the relief demanded in the complaint").

Here, because defendants have defaulted, plaintiff is a prevailing party and therefore

should receive an award of reasonable attorney's fees and costs.


B.  Calculation of Reasonable Attorney's Fees

1)  Legal Standard

"The district court retains discretion to determine . . . what constitutes a reasonable fee."

Millea v. Metro-North R.R. Co., 658 F.3d 154, 166 (2d Cir. 2011) (quoting LeBlanc-Sternberg v.

Fletcher, 143 F.3d 748, 758 (2d Cir. 1998)).  "The traditional starting point for determining a

reasonable attorneys' fee award is the 'lodestar' amount, which results in a presumptively

reasonable fee."  Dunn v. Advanced Credit Recovery, Inc., No. 11 CV 4023, 2012 WL 676350,

at *5 (S.D.N.Y. Mar. 1, 2012) (citing Perdue v. Kenny A., 559 U.S. 542, 551-52 (2010)), report and recommendation adopted by 2012 WL 1114335 (S.D.N.Y. Apr. 3, 2012); see also Millea v. Metro-North R.R. Co., 658 F.3d at 166-67 (explaining that it is legal error to fail to calculate the lodestar "as a starting point"); Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany, 522 F.3d 182, 188-90 (2d Cir. 2008).

To determine the lodestar amount, a court must determine "the number of hours reasonably expended on the litigation" and multiply that number "by a reasonable hourly rate." Moore v. Diversified Collection Servs., Inc., No. 07 CV 397, 2013 WL 1622949, at *1 (E.D.N.Y. March 19, 2013), report and recommendation adopted by 2013 WL 1622713 (April 15, 2013); see also Adusumelli v. Steiner, Nos. 08 CV 6932, 09 CV 4902, 10 CV 4549, 2013 WL 1285260, at *2 (S.D.N.Y. March 28, 2013) (explaining that "[c]ourts in the Second Circuit use the familiar 'lodestar' method of calculating reasonable attorney's fees – multiplying the number of hours reasonably expended by a reasonable hourly rate") (citing Millea v. Metro-North R.R., Co., 658 F.3d at 166); Dunn v. Advanced Credit Recovery, Inc., 2012 WL 676350, at *5.   Although the lodestar approach results in a "presumptively reasonable" fee,  "it is not 'conclusive in all circumstances.'"  Millea v. Metro-North R.R. Co., 658 F.3d at 167 (quoting Perdue v. Kenny A., 130 S. Ct. at 1673).  Rather, in "rare circumstances," a court may adjust the lodestar "when [the lodestar method] 'does not adequately take into account a factor that may properly be considered in determining a reasonable fee.'"  Id. (quoting Perdue v. Kenny A., 130 S. Ct. at 1673); see also Adusumelli v. Steiner, 2013 WL 1285260, at *2.  In other words, "a court may not adjust the lodestar based on factors already included in the lodestar calculation itself because doing so effectively double-counts those factors."  Id.  As the court explained in Dunn v. Advanced Credit Recovery, Inc., a court should "first use[] the lodestar method to

24

determine the amount of attorneys' fees and then, if necessary, adjust[] the resulting figure using the [Johnson v. Georgia Highway Express, Inc.] factors to reflect consideration of any special circumstances."[12]  2012 WL 676350, at *5, n.6.

The burden is on the party moving for attorney's fees to justify the hourly rates sought. See Hensley v. Eckerhart, 461 U.S. 424, 437, 103 S. Ct. 1933, 1943 (1983).  In addition to the parties' evidentiary submissions, the Court may consider its own experience and familiarity with the case and with rates generally charged.  See Cruz v. Local Union No. 3, 34 F.3d 1148, 1160 (2d Cir. 1994) (noting that "[a] district court's 'choice of rates [is] well within [its] discretion'") (quoting Cabrera v. Jakabovitz, 24 F.3d 372, 393 (2d Cir. 1994), cert. denied, 513 U.S. 876 (1994)).  To "inform and assist the court in the exercise of its discretion, the burden is on the fee applicant to produce satisfactory evidence – in addition to the attorney's own affidavits – that the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation."  Blum v. Stenson, 465 U.S. 886, 895 n.11 (1984).

Indeed, the Second Circuit has held that in calculating the presumptively reasonable fee, "courts 'should generally use the hourly rates employed in the district in which the reviewing court sits.'"  Simmons v. New York City Transit Auth., 575 F.3d at 174 (holding that when

---

[12] The Johnson factors are as follows:
> (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill required to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) the time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

Johnson v. Georgia Highway Express, Inc., 488 F.2d 714, 717-19 (5th Cir. 1974).

awarding attorney's fees, there is a presumption in favor of relying on the rates where the case is litigated, not where the attorneys are located) (citations omitted).

2)   <u>Analysis</u>

In this case, plaintiff was represented by the firm of Lichten & Bright, P.C. ("the Firm"), which is located at 387 Park Avenue South, Floor 5, New York, N.Y. 10006.  In accordance with <u>New York State Association for Retarded Children, Inc. v. Carey</u>, the Firm submitted contemporaneous billing records, setting forth the dates and amount of time during which services were rendered, the rate at which the services were charged, along with the name of the attorney and a description of services performed.  711 F.2d 1136, 1148 (2d Cir. 1983).  (<u>See</u> Bright Decl., Ex. 7).  Plaintiff seeks attorney's fees in the amount of $8,560, representing services performed by Daniel R. Bright, a member of the Firm with over 20 years of practice in state and federal court litigation.  (<u>Id.</u> ¶ 18).  According to Mr. Bright's Declaration, he is a founding partner of the Firm and he has practiced law since 1990.  (<u>Id.</u>)  Mr. Bright asserts that courts in this district routinely award lawyers with his skill and experience fees ranging from $350 to $450 per hour.  (<u>Id.</u> ¶ 19 (citing <u>Guinea v. Garrido Food Corp.</u>, No. 19 CV 5860, 2020 WL 136643, at *2 (E.D.N.Y. Jan. 13, 2020); <u>Christian v. Metropolitan Speciality Lab's, Inc.</u>, No. 17 CV 4721, 2019 WL 3729458, at *10 (E.D.N.Y. Aug. 8, 2019))).  Based on this precedent, he seeks an award of fees calculated at the rate of $400 per hour.

Based on the Court's knowledge of the rates generally charged for this type of work in connection with an FLSA default, the Court finds that the rates of $400 per hour for a partner is within the range of billing rates of similarly experienced attorneys working on comparable matters in the Eastern District.  <u>See, e.g.</u>, <u>Sajvin v. Singh Farm Corp.</u>, No. 17 CV 4032, 2018 WL

4214335, at *9 (E.D.N.Y. Aug. 13, 2018) (awarding $500 per hour to partner in FLSA case, though noting that "$450 has been the upper limit in this District since at least 2013"); Gutman v. Klein, No. 03 CV 1570, 2009 WL 3296072, at *2 (E.D.N.Y. Oct. 13, 2009) (stating that rates between $300 and $400 for partners are within the reasonable range in the Eastern District of New York).

Turning to the number of hours billed, Mr. Bright billed a total of 21.4 hours for legal work performed in connection with this matter.  (See Bright Decl., Ex. 7).  In reviewing a fee application, the court "should exclude excessive, redundant or otherwise unnecessary hours." Quaratino v. Tiffany & Co., 166 F.3d 422, 425 (2d Cir. 1999) (citing Hensley v. Eckerhart, 461 U.S. at 433-35, 440); see also Rotella v. Board of Educ., No. 01 CV 434, 2002 WL 59106, at *3-4 (E.D.N.Y. Jan. 17, 2002) (applying percentage reduction to fees of several attorneys for excessive and redundant billing); Quinn v. Nassau City Police Dep't., 75 F. Supp. 2d 74, 78 (E.D.N.Y. 1999) (reducing one attorney's fees by 20% and another's by 30% for unnecessary and redundant time); Perdue v. City Univ. of N.Y., 13 F. Supp. 2d 326, 346 (E.D.N.Y. 1998) (imposing a 20% reduction for redundancy); American Lung Ass'n v. Reilly, 144 F.R.D. 622, 627 (E.D.N.Y. 1992) (finding that "use of so many lawyers for relatively straightforward legal tasks was excessive and led to duplication of work" and deducting 40% of plaintiffs' lawyer's hours).

Similarly, courts routinely apply across-the-board reductions for vague entries, see, e.g., In re Olson, 884 F.2d 1415, 1428-29 (D.C. Cir. 1989) (reducing fees based on lack of specificity in description of work performed); DeVito v. Hempstead China Shop, Inc., 831 F. Supp. 1037, 1045 (E.D.N.Y. 1993) (reducing fee request by 40% for, inter alia, insufficient descriptions of work performed), rev'd & remanded on other grounds, 38 F.3d 651 (2d Cir. 1994); Cabrera v.

Fischler, 814 F. Supp. 269, 290 (E.D.N.Y. 1993) (reducing fees by 30% for vague entries with insufficient descriptions of work performed), rev'd in part & remanded on other grounds, 24 F.3d 372 (2d Cir.), cert. denied, 513 U.S. 876 (1994); Nu-Life Constr. Corp. v. Board of Educ., 795 F. Supp. 602, 607-08 (E.D.N.Y. 1992) (reducing fees by 30% due in part to lack of specificity in descriptions of work performed); Meriwether v. Coughlin, 727 F. Supp. 823, 827 (S.D.N.Y. 1989) (finding an overall reduction of 15% warranted based on vague descriptions of work performed).

Having reviewed the billing records submitted by counsel and being familiar with the proceedings to date, the Court finds that the number of hours charged in this matter is reasonable, given the amount of work performed.  Accordingly, based on the hourly rate set forth above, and the hours billed on this matter, the Court respectfully recommends that plaintiff be awarded $8,560 in attorney's fees.

C.  Reasonable Costs

Plaintiff also requests $685 in costs for filing fees ($400) and service of process fees: $157.00 for serving Buka and Goldburg, and $128 for serving Mashood.  (Bright Decl., Exs. 2, 3, 4, 8).

Based on a review of the record, the Court finds these costs to be reasonable, and respectfully recommends that plaintiff be awarded $685 in costs.  See Finkel v. Triple A Grp., Inc., 708 F. Supp. 2d 277, 290-91 (E.D.N.Y. 2010) (awarding $818.53 in costs for filing fees, service of process, legal research, and postage); see also Tlacoapa v. Carregal, 386 F. Supp. 2d 362, 374 (S.D.N.Y. 2005) (citing Kuzma v. Internal Revenue Serv., 821 F.2d 930, 933-34 (2d Cir. 1987) (explaining that "[i]dentifiable out-of-pocket disbursements for items such as

photocopying, travel, and telephone costs are generally taxable . . . and are often distinguished from nonrecoverable routine office overhead, which must be absorbed within the attorney's hourly rate").  In sum, the Court recommends that plaintiff be awarded $8,560 in attorney's fees, plus an additional $685 in costs, totaling $9,245.00.

<u>CONCLUSION</u>

 The Court respectfully recommends that plaintiff's motion for entry of a default judgment be granted, and that plaintiff be awarded the following damages:  (1) $2,265 for unpaid minimum wages and spread-of-hours pay; (2) $4,200 in penalties for wage notice and wage statement violations; (3) $2,265 in liquidated damages; (4) $305.49 in pre-judgment interest, plus interest accrued between the filing of the motion and final entry of judgment; and (5) $9,245 in attorney's fees and costs.  The Court further respectfully recommends that the defendants be held jointly and severally liable for the judgment.

Any objections to this Report and Recommendation must be filed with the Clerk of the Court within fourteen (14) days.  <u>See</u> 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(2); <u>see also</u> Fed. R. Civ. P. 6(a), (e) (providing the method for computing time).  Failure to file objections within the specified time waives the right to appeal the District Court's order.  <u>See, e.g.</u>, <u>Caidor v. Onondaga Cty.</u>, 517 F.3d 601, 604 (2d Cir. 2008) (explaining that "failure to object timely to a . . . report [and recommendation] operates as a waiver of any further judicial review of the magistrate [judge's] decision").

Plaintiff shall serve a copy of this Report and Recommendation on the defendants and file proof of such service on the record within two weeks of the date of this Report.

**SO ORDERED.**

Dated: Brooklyn, New York
       February 17, 2021

/s/ Cheryl L. Pollak
Cheryl L. Pollak
Chief United States Magistrate Judge
Eastern District of New York